```
JASON SKALA (ASBN
LAW OFFICE OF JASON SKALA, LLC
800 E. Dimond Boulevard, Suite 3-305
Anchorage, AK  99515
Tel:  (907) 569-6633
Fax:  (907) 569-6001
Email: jason@arcticattorneys.com
```

Attorney for Plaintiff MAUREEN KEATING on her own behalf and on behalf of all others similarly situated

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MAUREEN KEATING, on her own Behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br>-vs-<br><br>NORDSTROM, INC., a Washington Corporation.<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |

## GENERAL ALLEGATIONS

1. Plaintiff MAUREEN KEATING is a resident of the State of Alaska, formerly resident of the state of California, and a customer of NORDSTROM, INC. and is suing both in her individual capacity and on behalf of all others similarly situated.

2. Defendant Nordstrom, Inc. is a corporation duly organized and existing under the laws of the State of Washington, with its principal place of business at 1700 Sixth Avenue, Suite 1000, Seattle, WA, 98101.

3. Keating alleges that Nordstrom has a pattern and practice of advertising false sales prices while regularly charging its customers more than the ticketed price. Keating further alleges that Nordstrom falsely claims that it is committed to delivering low prices to its customers and

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Page 1

that it will not be undersold and that it price matches. Keating also alleges that Nordstrom regularly advertises pre-season sales in which it purports to discount the prices of fashion items, which it buys in limited quantities and does not intend to sell and/or nor does it sell such items in any substantial quantities at the purported full value, and which Keating further alleges is a violation of FTC guidelines. On information and belief, Keating understands that Nordstrom instructs its vendors to create hang tags that depict a false and inflated manufacturer's suggested retail price. Keating alleges that Nordstrom engages in other deceptive sales practices, including misleading representations that prices are reduced by "more than" or "up to" certain percentages, when the markdowns do not reflect the prominently displayed amounts, misrepresenting the savings of items which are regularly bought as multiple items and/or fails to apply the discounts it offers for multiple purchases.

4. Keating was lured into Nordstrom stores in Alaska and California during the respective class periods and, relying on Nordstrom's promises, purchased goods. During the class-period, when Keating discovered the overcharging, she regularly returned to Nordstrom stores to alert its employees to the issue, and request refunds. Nonetheless, Nordstrom continues in its deceptive practices.

5. On 2/15/2017, Keating purchased a scarf from Nordstrom from a display of several dozen such scarves marked at a 40 percent discount, with a handwritten price of $23.40. The scarf rang up at full-price of $39.00. (Exhibit 1 hereto).

6. On 2/16/2015 Keating was lured into Nordstrom Anchorage by email solicitations and signs prominently posted on the entry that prices were 40 percent off. Keating, a visually impaired consumer, was dismayed to find that prices were not all 40% reduced, but as the very small print disclosed only "up to". In the store, Keating, again enticed by a sign which clearly stated 33 percent off, and in small print the words "or more," examined a table of socks. None of the items at all were marked at reductions of more than 33 percent. Keating purchased four items, three of which had a hand written reduced price marked upon them which represented 33 percent reduction. Upon examining her receipt at home, Keating found that she had received a sales price

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF  2

on only one item, and thus she was forced to return to the store at her own time and expense to request an adjustment. The sales assistant told Keating that there were never any items intended for sale at prices reduced more than 33 percent and further that she had not received the sales price because "we don't ring up the hand-written price, we use the bar code and charge the price that is entered on the computer." (Exhibit 2 receipts and photographs of pairs of socks.)

7. On 1/3/2014, following solicitation from Nordstrom as to a sale, Keating made several substantial purchases totaling more than $600 in the Children's Department at the Stonestown Galleria store, in San Francisco, California. However, many of the prices rung up by the cashier did not reflect the savings promised online. Keating was forced to research the issue and return to the store for an adjustment. Out of 19 items purchased that day, and despite prominently displayed signage, Keating received a sales or promo price on only 1 item, and 4 other items were charged at a price in excess of the advertised sales prices. It took Keating many hours to receive a price adjustment and refund to her debit account for the overpriced items (for example a sweater blanket charged at $32.16, plus tax, was later adjusted to the advertised price of $23.98. Exhibit 3).

8. On 2/12/2015 Keating purchased a Je T'aime knit top which is clearly labeled with an affixed printed label with the price $88.00. Upon examining her receipt, she was charged $98.00. On a return trip to the store, Keating found that all of the other similar knit tops had had the printed price torn off, and a $98.00 price handwritten thereon. Keating found the same item available online for $78.00. When Keating asked an assistant about the price differences and how the price guarantee worked, Keating was told she could not have a price adjustment. (Exhibit 4.)

9. Alaska and California consumers, as with Keating, are influenced in their shopping decisions by the perception of value and savings. Upon information and belief, Nordstrom has been regularly deceiving its customers in the states of California and Alaska during the entire applicable class periods. Nordstrom is not only engaging in false and deceptive price comparisons, but regularly overcharges its consumers more than the advertised price, which is not only a violation of statutory consumer rights, but constitutes common-law fraud.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action under the Class Action Fairness Act of 2005. Pursuant to 28 USC Section 1332(d)(2) and (6) this Court has jurisdiction because the aggregate claims of the Class exceed $5 million, exclusive of costs, and the putative class representative is a citizen of a different state than Nordstrom.

11. The United States District Court for the District of Alaska has personal jurisdiction over Nordstrom because it is licensed to do business and does business in the States of Alaska and has intentionally availed itself of the Alaska market, so as to make the exercise of jurisdiction within this venue consistent with fair play.

12. The deceptive sales practices described herein are identical in impact to the California class as the Alaska class of consumers. Consumers reasonably expect to receive the savings promised by a retailer and/or a ticketed price.

## CLASS ACTION ALLEGATIONS

13. <u>Class Definition</u>. Plaintiff brings this suit as a class action pursuant to Business & Professions Code section 17203, and the Class Action Fairness Act on behalf of herself and all other similarly-situated persons as a member of a Class defined hereinbelow. (Plaintiff intends to amend this Complaint to add class actions pursuant to AS 45.50.535 and Cal. CC §1750 following expiration of the notice period):

> All persons who reside in the States of Alaska and California and who within the applicable statute of limitations preceding the filing of this action purchased goods from Nordstrom which reflected a discount price whether by posted signage and/or by amendment to the affixed hang tag price, and who were not afforded the sales price. The putative class will also include those who purchased items with a purported preseason price hang tag. The putative class will also those who purchased items that are regularly discounted for multiple purchases, and for whom the purported percentage of savings was misrepresented.

14. <u>Numerosity</u>. The proposed Class is sufficiently numerous in that it is believed that NORDSTROM induced tens of thousands of consumers to purchase goods through the false perception that they were saving money. Class members are so numerous and are dispersed

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF               4

throughout the states that joinder of all Class members is impracticable. Class members can be identified by, *inter alia*, records maintained by Defendants, including but not limited to its email receipts, catalogue distribution addresses, personal shopper database, Nordstrom consumer rewards program and its store credit cards.

15. <u>Common Questions of Fact and Law</u>. Common questions of fact and law exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of fact and law that predominate over any individual issues are:

- Whether Defendants practices were unlawful as defined in Business and Professions Code 17200; Whether Defendants' practice was "unfair" within the meaning of the UCL; Whether Defendants' advertisements and other statements were likely to mislead within the meaning of the UCL;
- Whether Nordstrom's overcharging of customers constitutes common-law fraud;
- Whether Class members lost money as a result of Defendants' deceptive sales practices;
- Whether restitution is available as a remedy;
- Whether injunctive relief should issue to protect consumers from Nordstrom's deceptive sales practices;
- Following the expiration of the notice period, common questions will relate to whether or not the deceptive practices constitute violations of the Alaska and California Consumer Protection Acts, embodied at AS AS 45.50.535 and Cal. Civil Code §1750; and
- Defendants defenses, if any, apply across the board as to all class members.

## FIRST CAUSE OF ACTION

(Common Law Fraud)

16. Plaintiff incorporates by reference paragraphs 1-9 hereof as though set forth in full here, including Nordstrom's false and deceptive acts set forth infra.

17. Keating and other similarly situated consumers were induced to shop at Nordstrom during the class period as a result of solicitations to save money on discounted and sale goods.

18. Defendant's stated prices and percentage savings were false and deceptive.

19. Keating and other similarly situated consumers did not know the falsity of Nordstrom's representations, and would not have purchased the items had they known that the savings were illusory and/or otherwise untrue.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF       5

20. Keating and other similarly situated consumers justifiably relied on Nordstrom's advertised and posted prices and hang tags.

21. As a result, Keating and other similarly situated customers lost time and money.

22. Alaska and California consumers continue to lose money as a result of Nordstrom's deceptive sales practices, including but not limited to overcharging.

23. Even after being notified by Keating of multiple errors in the prices charged to consumers and discrepancies with the promised sales and percentage savings, Nordstrom has continued unabated to overcharge its customers.

24. Nordstrom should be made to disgorge its ill-gotten gains during the class period. Further, an award of punitive damages should be made in favor of Plaintiff and against Nordstrom for intentionally and knowingly continuing to perpetrate fraud against its customers.

## SECOND CAUSE OF ACTION

(Violations of Business & Professions Code Section 17200)

25. Plaintiff incorporates by reference paragraph 1-9 hereof as though set forth in full here.

26. Nordstrom has committed fraudulent acts of false advertised and unfair competition, since on or after February 16, 2013, as defined by Business and Professions Code section 17200 and 17500, by engaging in the following practices:

> Nordstrom violates the unfair, fraudulent and unlawful prongs of the UCL by charging its customers more than the marked prices, and by falsely representing the percentages of savings offered to customers. Nordstrom also violated Section 17500, the False Advertising prong by solicitation consumers through printed and posted materials that falsely represented discounted prices.

27. As a result of these acts and practices, Nordstrom has improperly obtained money from Keating and others similarly situated.

28. Nordstrom should be held to disgorge its ill-gotten gains and provide restitution to Keating and the class of consumers it deceived.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF     6

29. Keating also asks that this Court enjoin Nordstrom from continuing to engage in the fraudulent practices which violate the UCL.

WHEREFORE, plaintiff prays for relief as set forth hereinafter.

1. Pursuant to Business and Professions Code sections 17203 and 17535, and pursuant to the equitable powers of this Court, plaintiff prays that the Court enter an Order immediately enjoining Nordstrom from making any sales to any Alaska or California consumers unless and until it can demonstrate to the Court's and Plaintiff's satisfaction that it will no longer overcharge its customers;

2. Pursuant to Business and Professions Code sections 17203 and 17535, and pursuant to the equitable powers of this Court, plaintiff prays that the defendants to ordered to restore to the general public all funds acquired by means of any act or practice declared by this Court to be unlawful or fraudulent or to constitute unfair competition or such other untrue or misleading deception, including but not limited to common law fraud.

3. For an award of attorney's fees pursuant to the California Unfair Competition Law.

4. For an award of punitive damages on the fraud claim.

5. For costs of suit, and for such further relief as the Court may order.

DATED: February 16, 2017

By _____
JASON SKALA
Attorneys for Plaintiff Maureen Keating

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF     7